CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
May 08, 2023
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 5:95-CR-70046-1 |
| | ) | |
| v. | ) | |
| | ) | |
| OMAR YUSUF DESANGES, | ) | By: Hon. Michael F. Urbanski |
| Defendant | ) | Chief United States District Judge |

### MEMORANDUM OPINION

Defendant Omar Yusuf DesAnges, originally proceeding pro se but later represented by counsel, has filed three motions to reduce his sentence pursuant to the First Step Act of 2018, Pub. L. No. 115-015. ECF Nos. 95, 109. He asks that his sentence be reduced from life to 235 months or time served, whichever reduction is greater. The government filed a response arguing that DesAnges is not eligible for relief under the First Step Act. ECF No. 119. DesAnges also has filed two motions for compassionate release, one which he filed pro se, ECF No. 124, with a supplement, ECF No. 128, and one which counsel filed on his behalf, ECF No. 132.[1] The government has responded to the motions for compassionate release. ECF No. 133. As the issues have been fully briefed, the court does not believe a hearing will aid in the decisional process.

---

[1] "The First Step Act" is the name of the legislative act, Public Law 115-39, that was passed by Congress on December 18, 2018. The act made changes to the compassionate release statute, 18 U.S.C. § 3582 (c)(1), and changes to the quantities of cocaine base that trigger sentences under 18 U.S.C. § 841(b)(1), as well as other changes to sentencing statutes and BOP administrative programs. Despite all the changes being part of the First Step Act, this court refers to DesAnges' initial motion, ECF No. 109, as his "First Step Act" claim and refers to his motion based on 18 U.S.C. § 3582(c)(1) as his "compassionate release" claim.

As discussed more fully below, the court **DENIES** the motions for compassionate release and **GRANTS in part** the motions for First Step Act relief. DesAnges' sentence will be reduced from life to 450 months, to be followed by a 4-year term of supervised release.

## I. Background

On June 23, 1995, DesAnges, who was 23 at the time, was charged in a superseding indictment with the following:

> (1) intentionally, knowingly, and unlawfully killing Sanford Datcher while engaging in a conspiracy to distribute 50 grams or more of cocaine base, (an offense punishable under 21 U.S.C. § 841(b)(1)(A)(iii)), in violation of 21 U.S.C. § 848(e)(1)(A) (Count 1);

> (2) carrying and using a firearm in the course of committing the crime of conspiracy to distribute cocaine base, and causing the death of Datcher through the use of the firearm, in violation of 18 U.S.C. § 924(c) and 924(i)(1) (Count 2);

> (3) conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 3); and

> (4) using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 4).

Superseding Indictment, ECF No. 11.

The Pre-Sentence Investigation Report (PSR), described the facts of Datcher's murder. Datcher was an associate of DesAnges and on December 6, 1994, Datcher was sentenced for possession of cocaine in state court. At the sentencing hearing, Datcher testified that he assisted the Drug Task Force in order to gain consideration for a reduced sentence. PSR, ECF No. 99 ¶ 9. Two people who were present in court reported to DesAnges that Datcher testified about cooperating. DesAnges became upset about the possibility of Datcher telling authorities

2

about DesAnges' involvement in drug trafficking and was heard to say several times that the next time he saw Datcher he was going to "get him." Id.

On the evening of December 23, 1994, Datcher and a friend, Dawn Ford, were in Ford's automobile in Clarke County, Virginia. DesAnges approached the automobile and fired thirteen shots from a .40 caliber semi-automatic handgun into the driver's side window, killing Datcher and wounding Ford. Id. ¶ 10. DesAnges fled on foot and later traveled to Washington, D.C. where he disassembled the handgun and threw it into the Potomac River. DesAnges called one of the people who had been at Datcher's hearing and asked, "Did I do good?" The person informed DesAnges that Datcher was dead. Id. DesAnges was arrested on January 9, 1995 in Washington, D.C. on a warrant obtained for a state firearms violation. Id. ¶¶ 10–11.

After the murder, DesAnges met with two associates and told them, "If I go down you all go down with me." One of the associates stated that he was very afraid of DesAnges and believed DesAnges was capable of retaliating against him. Id. ¶ 14.

On March 28, 1996, DesAnges entered into a plea agreement in which he pled guilty to Counts 1, 3, and 4. Count 2 was dismissed on motion of the government. ECF Nos. 39, 61. In exchange for his guilty plea, the government agreed not to pursue the death penalty on Count 1. Plea Agreement, ECF No. 61 at 3.

According to the PSR, Counts 1 and 3 were grouped in accordance with United States Sentencing Guidelines (USSG or guidelines) § 3D1.2(b) and (c), with the highest offense level of the group determining the offense level for the group. Count 4 carried a mandatory 60-month sentence and was precluded from grouping or guidelines computations. PSR, ECF No.

3

99 ¶ 17. The sentencing guidelines called for a base offense level of 43 for a violation of 21

U.S.C. § 848(e)(1)(A). USSG § 2A1.1. In the PSR, DesAnges' sentence was calculated as having

a 2-point increase because he directed at least three individuals in the distribution of cocaine

base, a 2-point increase for obstruction of justice after he threatened or intimidated witnesses

during the course of the investigation, and a 3-point decrease for acceptance of responsibility,

resulting in a total offense level of 44, but treated as an offense level of 43 in accordance with

USSG Ch. 5, Pt. A, App. Note 2. PSR, ECF No. 99 ¶¶ 17–27. However, in the addendum to

the PSR, it appears that the court sustained an objection to one of the 2-point increases and

found that DesAnges had a total offense level of 42. See Addendum to PSR, ECF No. 100 at

1, 4; Sentencing Tr., ECF No. 137 at 62.

On Count 1, DesAnges faced a statutory minimum sentence of 20 years and a

maximum of life. 21 U.S.C. § 848(e)(1)(A). On Count 3 his statutory sentencing range was 10

years to life. 21 U.S.C. § 841(b)(1)(A). On Count 4 he faced a statutory sentence of 60 months,

to run consecutively to all other sentences. 18 U.S.C. § 924(c)(1)(A)(i). With a total offense

level of 42 and a criminal history category of II, his guidelines range for imprisonment was

360 months to life, to be followed by 5 years on Count 4. Addendum to PSR, ECF No. 100

at 1; USSG Ch. 5 Pt. A.

On July 2, 1996, the court sentenced DesAnges to life on Counts 1 and 3 and to 60

months to run consecutively on Count 4. The sentences were to be followed by a 5-year period

of supervised release on Counts 1 and 3 and a 3-year period of supervised release on Count 4,

to run concurrently. ECF Entry of July 2, 1996. The court commented that it chose the life

4

sentence "because of the callousness and the lack of respect for human life evidenced by the defendant's acts; and also for the reasons the court articulated in open court in concluding that there existed bases for departure (although defendant was sentenced within the applicable guideline range without a departure)." Statement of Reasons attached to Addendum to PSR, ECF No. 100 at 4; Sentencing Tr., ECF No. 137 at 61–62.[2] DesAnges has served approximately 336 months. According to the Bureau of Prisons website, DesAnges is incarcerated at FCI Fairton.[3]

## II. Compassionate Release

DesAnges argues that he is entitled to compassionate release based on his vulnerability to COVID-19 and also because if he were sentenced today, he would receive a significantly shorter sentence. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

---

[2] The grounds for upward departure found by the court were that Datcher's murder was committed in large part to facilitate and cover up DesAnges' drug trafficking activities and also because the repeated firing of DesAnges' weapon into Datcher, who was in close proximity to Ford, created a grave risk of death to her. Sentencing Tr., ECF No. 137 at 61–62.

[3] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last viewed April 25, 2023) (search "Omar DesAnges").

(i) extraordinary and compelling reasons warrant such a reduction
. . . and that such a reduction is consistent with applicable policy statements
issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Accordingly, DesAnges' requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

Regarding exhaustion of administrative remedies, DesAnges asserts and provides evidence that he submitted his request for compassionate release to the Warden of FCI Butner which was denied on March 25, 2021. ECF No. 124-1 at 8. The government does not contest that DesAnges has exhausted his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A). Accordingly, the court finds that DesAnges has satisfied the statute's exhaustion requirements.

The court must next consider whether DesAnges has shown an extraordinary and compelling reason for a reduction in his term of imprisonment. The United States Sentencing Commission Guidelines Manual § 1B1.13 policy statement provides that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the

6

defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the Bureau of Prisons ("BOP") for "other reasons" than, or in combination with, those described in Application Notes (A)–(C).[4] The court notes that this policy statement, while governing only for BOP-filed motions for compassionate release, "remains helpful guidance even when motions are filed by defendants."[5]

### A. COVID-19

Looking first at DesAnges' argument that his health conditions make him particularly susceptible to COVID-19, DesAnges has presented evidence that he suffers from asthma, hypertension, and a seizure disorder. Medical Rs., ECF No. 132-7. DesAnges uses an inhaler for his asthma, Id. at 19, and takes medication for his seizure disorder, Id. at 10, but has refused treatment for hypertension. Id. at 22. DesAnges was diagnosed with COVID-19 at the beginning of the pandemic in March 2020 and believes that he is suffering from lingering side effects, including a seizure he suffered in March 2021. ECF No. 124 at 5.

DesAnges asserts that he is particularly susceptible to COVID-19 because of his underlying medical conditions. He asserts that while he is vaccinated against COVID-19, due to his health conditions, he is at an increased risk of serious illness or death if he contracts COVID-19 and further alleges that the increased risk presents an extraordinary and compelling reason warranting a sentence reduction.

---

[4] See U.S. Sentencing Comm., Guidelines Manual § 1B1.13 at cmt. n.1(A)–(D).
[5] United States v. McCoy, 981 F.3d 271, 280-84, 282 n.7 (4th Cir. 2020).

During the COVID-19 pandemic, this court has found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility. But the assessment of compassionate release claims based on COVID-19 has changed with the availability of vaccines against the disease. According to the Centers for Disease Control and Prevention, people who are up to date with their COVID-19 vaccines "have lower risk of severe illness, hospitalization and death from COVID-19 than people who are unvaccinated or who have only received the primary series." In addition, "updated boosters provide added protection against the recent Omicron subvariants that are more contagious than the previous ones. The recent subvariants, BA.4 and BA.5, are very closely related to the original variant, Omicron, with very small differences between it and the original variant."[6]

DesAnges' asthma is a risk factor that increases the risk of serious illness if he contracts COVID-19.[7] However, because he is vaccinated, DesAnges has a reduced risk of COVID-19, including the risk of severe disease. In addition, the court notes that DesAnges has refused treatment for hypertension, ECF No. 132-7 at 3–7, 134, perhaps indicating that he does not consider it to be a serious condition. Also, since having a seizure in 2021, DesAnges has been on medication to control his seizures and has not reported a seizure since that time. Id. at 10, 27–30. Additionally, DesAnges was infected with the virus before the vaccines became

---

[6] See Ctrs. For Disease and Prevention, Overview of COVID-19 Vaccines (updated Nov. 1, 2022) https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/overview-COVID-19-vaccines.html

[7] See Ctrs. for Disease Control and Prevention, People with Certain Medical Conditions, (updated Feb. 10, 2023), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

available and he recovered. Mot., ECF No. 124 at 5. Taken together, DesAnges' vaccination status, recovery from the virus, and treatment for his medical impairments demonstrate that he does not have a particularized susceptibility to severe illness from COVID-19.[8]

In addition, as of April 25, 2023, FCI Fairton had one inmate and one staff person with active cases of COVID-19.[9] The low positivity rate of COVID-19 at the facility supports the conclusion that DesAnges is not at substantial further risk for contracting COVID-19 and that the measures taken at FCI Fairton are appropriate to deter potential infection in the future. For these reasons, the court finds that DesAnges' motion for compassionate release based on COVID-19 must be **DENIED**.

### B. Sentencing Disparity

DesAnges also argues that if he were sentenced today, he would receive a substantially lower sentence than the sentence he received at the time he was convicted. He argues that the disparity between the sentence he received in 1996 and the sentence he would receive today is an "extraordinary and compelling" reason for a sentence reduction.

DesAnges asserts that the guideline setting the base offense level for Count 1, § 2D1.1(d)(1), has been amended and now provides for a cross-reference to either the first-degree or second-degree murder guideline, as appropriate, where it used to cross-reference the first-degree murder guideline alone. He next argues that Count 1 of the indictment describes

---

[8] See United States v. Williams, No. 5:01-CR-00012-KDB, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021) (denying compassionate release motion from partially vaccinated inmate); United States v. Wakefield, No. 1:19-cr-00095-MR-WCM, 2021 WL 640690, at *2 (W.D.N.C. Feb. 18, 2021) (same); United States v. Beltran, No. 6:16-4(SSSS)-4, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (same).

[9] See Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last viewed April 25, 2023).

an offense that would constitute second-degree murder, while including none of the allegations that would constitute first degree murder, such as malice aforethought. He contends that if the second-degree murder cross-reference applies, he would have a base offense level of 38 and a total offense level of 37, which would reduce his guideline range to 235–293 months. However, DesAnges' argument is unavailing.

First, the guideline applicable to DesAnges is the first-degree murder guideline, §2A1.1, which has a base offense level of 43. "The United States Sentencing Commission Guideline for violation of 21 U.S.C. § 848(e)(1)(A) is found in U.S.S.G. §2A1.1 and calls for a base offense level of 43." PSR, ECF No. 99 ¶ 18. The PSR further states that "pursuant to 2D1.1(d)(1), if a victim is killed under circumstances that would constitute murder under 18 U.S.C. § 1111, apply 2A1.1 (first degree murder), resulting in a base offense level of 43[.]" Id. This sentence appears to confirm that regardless of whether DesAnges was convicted under 21 U.S.C. § 848(e)(1)(A), or for killing someone under circumstances that would constitute murder under 18 U.S.C. § 1111, his base offense level would be 43.

DesAnges is correct that USSG § 2D1.1(d)(1) has been amended and now allows the application of USSG § 2A1.2 (second-degree murder) where appropriate. However, DesAnges was not sentenced based on a victim being killed under circumstances that would constitute murder under 18 U.S.C. § 1111 but based on his conviction for violation of 21 U.S.C. § 848(e)(1)(A). The Commentary for § 2A1.1 specifically provides that "[i]f the defendant is sentenced pursuant to 18 U.S.C. § 3591 et seq. or 21 U.S.C. § 848(e), a sentence of death may be imposed under the specific provisions contained in the statute. This guideline applies when

10

a sentence of death is not imposed under those specific provisions." USSG § 2A1.1, comment. (n.1–3) (emphasis added). DesAnges was sentenced under 21 U.S.C. § 848(e) and a death sentence was not imposed, making USSG § 2A1.1 the applicable guideline.

Second, even if USSG § 2D1.1(d)(1) were the applicable guideline, the court correctly found that the first-degree murder enhancement would apply. DesAnges argues that because the indictment makes no reference to malice-aforethought or any of the other circumstances that form the basis of first-degree murder (willful, deliberate, malicious, and premeditated killing), 18 U.S.C. § 1111, he would be subject to the guideline provision for second-degree murder. Mot., ECF No. 132 at 4-5. DesAnges offers no authority for the notion that application of a particular guideline is dependent on language in the indictment, and none was found. To the contrary, "[a] sentencing court can make factual findings under the preponderance of the evidence standard to determine the appropriate sentence within the statutory maximum." United States v. Gibson, 328 F. App'x 860, 865 (4th Cir. 2009) (per curiam). In Gibson, the defendant was not indicted for murder, but the court heard evidence during sentencing proceedings that the defendant ordered the murder of a confidential informant and that the likely "trigger man" was an associate of the defendant. The court applied the first-degree murder cross-reference under USSG §§ 2D1.1(d) and 2A1.1 to the defendant and the Fourth Circuit affirmed. Id. at 864–65. See also United States v. Chaney, 493 F. App'x 448, 452 (4th Cir. 2021) (per curiam) (affirming application of USSG § 2D1.1 first-degree murder cross-reference based on testimony at sentencing that defendant shot victim during a robbery); and United States v. Renteria, No. 7:12-CR-37-FA-10, 2015 WL

11

8665416 (E.D. N.C. Dec. 11, 2015) (applying first-degree murder cross-reference found in USSG § 2D1.1(d)(1) to defendant based on testimony at sentencing).

In this case, the indictment charges DesAnges with "intentionally" and "knowingly" killing Datcher. Superseding Indictment, ECF No. 11 at 1. As part of his plea agreement, DesAnges stipulated that there was a sufficient factual basis to support each and every material factual allegation contained within the portion of the indictment to which he was pleading guilty. Plea Agreement, ECF No. 61 at 4. It is undisputed that the facts in the case showed that DesAnges planned and carried out the murder of Datcher to prevent Datcher from testifying about DesAnges' involvement in drug trafficking. PSR, ECF No. 99 ¶¶ 9–11. Accordingly, the court correctly applied the first-degree murder cross-reference and the change to USSG § 2D1.1(d)(1) would not require a different result today. Based on the foregoing, DesAnges cannot show a disparity between the sentence he received in 1996 and the sentence he would receive today. Therefore, he has not shown an "extraordinary and compelling" reason for compassionate release and the court must **DENY** his motion.

### III. The First Step Act

DesAnges also argues that he is entitled to relief under the First Step Act, a remedial statute "intended to correct earlier statutes' significant disparities in the treatment of cocaine base (also known as crack cocaine) as compared to powder cocaine." United States v. Wirsing, 943 F.3d 175, 176–77 (4th Cir. 2019). Prior to passage of the Fair Sentencing Act of 2010, Pub.L. 111-220, a drug trafficker dealing in crack cocaine was subject to the same sentence as a trafficker dealing 100 times more powder cocaine. Kimbrough v. United States, 552 U.S. 85,

12

91 (2007). The sentencing scheme had a racially disparate impact that resulted in excessive and unwarranted punishments that disproportionately fell on defendants of color. Wirsing, 943 F.3d at 177–78 (internal citations omitted). The Fair Sentencing Act reduced the crack-to-powder ratio to 18-to-1 and eliminated the mandatory minimum sentence for simple possession of crack. Id. at 178.

The Fair Sentencing Act did not apply retroactively to defendants who were sentenced before its passage on August 3, 2010, unless they could bring a motion under the narrow exception provided in 18 U.S.C. § 3582(c)(2). Id. at 178–79 (citing United States v. Black, 737 F.3d 280, 282, 286–87 (4th Cir. 2013)). After passage of the Fair Sentencing Act, the United States Sentencing Commission amended the guidelines to lower the base offense levels assigned to different amounts of cocaine base (Amendments 750 and 782) and provided that the amendments applied retroactively. Id. at 179 (citations omitted). The amendments allowed some defendants sentenced before August 3, 2010 to seek relief, not directly under the Fair Sentencing Act, but by means of a § 3582(c)(2) motion related to one of the amendments. Nevertheless, a reduction under § 3582(c)(2) only applied if the guidelines had the effect of lowering the defendant's applicable guideline range. Id. The amendments did not operate to lower the sentences for defendants convicted of very large quantities of crack, or those whose sentences were driven not by the quantity of drugs involved, but by their status as a career offender. Id.

The First Step Act allows defendants sentenced prior to August 3, 2010, and who were ineligible for relief under the guideline amendments, to seek a reduction in their sentences as

if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed. First Step Act § 404(b), 132 Stat. at 5222. A "covered offense" is a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." Id. at § 404(a), 132 Stat. at 5222. Even when a defendant is eligible for a sentence reduction under the First Step Act, courts have discretion to lower or not lower his sentence. Id. at 404(c), 132 Stat. at 5222; see also Concepcion v. United States, 142 S.Ct. 2389, 2396 ( 2022) ("By its terms . . . the First Step Act does not compel courts to exercise their discretion to reduce any sentence . . ..")

At the time DesAnges was sentenced, a violation of § 841(a)(1) carried a mandatory minimum sentence of 10 years and a maximum of life imprisonment if the offense involved more than 50 grams of cocaine base, and a penalty range of 5 to 40 years if the offense involved more than 5 grams of cocaine base. 21 U.S.C. § 841(b)(1)(A) and (B) (1996). In 2010, the Fair Sentencing Act reduced penalties for offenses involving cocaine base by increasing the threshold drug quantities required to trigger mandatory minimum sentences under 21 U.S.C. § 841(b)(1). Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010). Currently, in order to trigger the 10-years-to-life-sentencing range, the offense must involve more than 280 grams of cocaine base, and to trigger the 5-to-40-year sentencing range, the offense must involve more than 28 grams of cocaine base. For an offense involving an unspecified amount of cocaine base, the punishment range did not change under the Fair

Sentencing Act, and it remains punishable by up to 20 years imprisonment. 21 U.S.C. §
841(b)(1)(C).

DesAnges argues that Counts 1 and 3 are both covered offenses under the First Step
Act and that he is entitled to a reduction in the sentences he received for those violations.
While the court agrees that Count 3 is a covered offense under the First Step Act, Count 1 is
not. Nevertheless, "All defendants who are serving sentences for violations of 21 U.S.C. §
841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations
in Section 404(c) of the First Step Act, are eligible to move for relief under that Act." Wirsing,
943 F.3d at 186. As discussed below, the court finds that DesAnges' sentence on Count 1 is
subject to a reduction pursuant to the sentencing package doctrine.

### A. Crack Cocaine Conviction

The government concedes that DesAnges' conviction on Count 3 is a covered offense
under the First Step Act. On Count 3, DesAnges was sentenced under 21 U.S.C. §
841(b)(1)(A), which carried a sentencing range of 10 years to life. PSR, ECF No. 99 ¶ 46.
Presumably, he was sentenced under § 841(b)(1)(A) based on the amount of crack for which
he was found responsible in the PSR, "at least 680 grams." PSR, ECF No. 99 ¶ 7. However,
no drug weight was specified in the indictment or found by a jury. Under the First Step Act,
"a defendant cannot be resentenced under a statute carrying a mandatory minimum sentence
when he or she was not indicted for any particular drug quantity and the jury was never
required to make a finding that that would support the application of a mandatory minimum."
Jones v. United States, 431 F.Supp.3d 740, 751 (E.D. Va. 2020). "In such situations,

15

defendants must be resentenced for an unspecified drug quantity pursuant to § 841(b)(1)(C) ... which carries a maximum sentencing range of 20 years." United States v. Alomia-Torres, No. 3:97-cv-00040-FDW, 2021 WL 5456988, at *4 (W.D.N.C. Nov. 22, 2021).[10]

Thus, although DesAnges' guidelines sentencing range remains the same because it was based on the application of USSG §2A1.1(First Degree Murder), Count 3 is a "covered offense" for purposes of the First Step Act. After thoroughly considering the 18 U.S.C. § 3553(a) factors as discussed below, the court will reduce his sentence to the statutory maximum of 20 years. Therefore, DesAnges' motion for First Step Act relief as to Count 3 is **GRANTED** and his sentence on that count is reduced to 20 years.

### B. Conviction Under 21 U.S.C. § 848(e)(1)(A)

In Count 1, DesAnges was convicted of violating 21 U.S.C. § 848(e)(1)(A), which provides the following:

> (A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title . . . who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and may be up to life imprisonment, or may be sentenced to death[.]

Under the First Step Act, a conviction for 50 grams of cocaine base no longer qualifies as an offense under § 841(b)(1)(A). Rather, it now falls under § 841(b)(1)(B), which punishes crimes involving between 28 and less than 280 grams of cocaine base. Thus, if DesAnges were

---

[10] See also Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 570 U.S. 99 (2013). Read together, these cases establish that the drug weight is an element of the offense and any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt.

convicted for distribution of 50 grams of cocaine base today, it would be a § 841(b)(1)(B) offense and would not serve as a predicate offense for § 848(e)(1)(A).

A defendant commits a "covered offense" and is eligible for a First Step Act reduction if he was convicted under a statute "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." United States v. Woodson, 962 F.3d 812, 815 (4th Cir. 2020) abrogated on other grounds by Terry v. United States, 141 S.Ct. 1858 (2021) (citing § 404(a), 132 Stat. at 5222 and Wirsing, 943 F.3d at 815). DesAnges argues that because the First Step Act modified the penalties for crimes involving 50 grams of crack such that they no longer are considered offenses under § 841(b)(1)(A), his § 848(e)(1)(A) offense is considered a "covered offense" under the First Step Act. The government responds that DesAnges' life sentence was for murder under § 848(e)(1)(A) and the statutory penalties have not changed but remain 20 years to life in prison and potentially death.

DesAnges' argument is foreclosed by the Fourth Circuit decision in United States v. Roane, 51 F.4th 541 (4th Cir. 2022), petition for cert. docketed (U.S. April 18, 2023) (No. 22-7309). In Roane, the court held that a conviction under 21 U.S.C. § 848(e)(1)(A) is not a "covered offense" under the First Step Act. The court found that neither the text of the act, nor the intent of Congress in passing the act, suggested that § 841(e)(1)(A) was a "covered offense." See discussion, Roane, 51 F.4th at 548–51. The court further noted that the Supreme Court clarified that "the relevant question district courts must ask when conducting the covered offense inquiry is 'whether the Fair Sentencing Act modified the statutory penalties for petitioner's offense.'" Id. at 549 (quoting Terry, 141 S.Ct. at 1862) (emphasis in Roane).

17

The relevant offense in <u>Roane</u>, as in DesAnges' case, was 21 U.S.C. § 848 (e)(1)(A), which is a separate offense from the 21 U.S.C. § 841(b)(1)(A) drug distribution predicate, and the penalties for violation of 21 U.S.C. § 848(e)(1)(A) were unchanged after passage of the Fair Sentencing Act. <u>Id.</u> at 550. "Thus, § 848(e)(1)(A) is not a "covered offense" eligible for sentence reduction under the First Step Act." <u>Id.</u> Accordingly, in light of <u>Roane</u>, DesAnges' conviction in Count 1 for killing Sanford Datcher while engaging in a conspiracy to distribute 50 grams or more of cocaine base is not a "covered offense" under the First Step Act.

### C. Sentencing Package Doctrine

However, even though the § 841(e)(1)(A) offense is not a "covered offense," the court may still consider the sentence assessed for that offense under the sentencing package doctrine. "Under the sentencing package doctrine, when a district court reconsiders a sentence for one count, it can reconsider sentences for other counts." <u>United States v. Sellers</u>, Cr. No. 5:08-944, 2021 WL 2550549, *5 (D.S.C. June 21, 2021) (quoting <u>United States v. Hill</u>, Cr. No. JKB-96-00399, 2020 WL 891009, at *4 (D. Md. Feb. 24, 2020) and citing <u>United States v. Ventura</u>, 864 F.3d 301, 309 (4th Cir. 2017)). "The sentencing package doctrine accounts for the holistic approach that a district court should employ when sentencing a defendant convicted of multiple offenses." <u>Ventura</u>, 864 F.3d at 309.

> We agree with our sister circuits that "when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan," and that if some counts are vacated, "the judge should be free to review the efficacy of what remains in light of the original plan." <u>United States v. Townsend</u>, 178 F.3d 558, 567 (D.C. Cir. 1999) (internal quotation marks omitted).

Id.

The Fourth Circuit has not determined whether the sentencing package doctrine applies in the context of the First Step Act and there is a split among other circuits regarding whether it applies.[11] The Seventh Circuit has found that "when a defendant has been sentenced for two crimes, one covered by the First Step Act and the other not, a district judge has discretion to revise the entire sentencing package." United States v. Hible, 13 F.4th 647, 652 (7th Cir. 2021) (citing United States v. Hudson, 967 F.3d 605, 610 (7th Cir. 2020)).

The Second, Tenth, and Eleventh Circuits have reached the opposite conclusion. "[T]he First Step Act prohibits a district court from reducing the sentence on a non-covered offense, even if … the covered and non-covered offenses were grouped together under the Sentencing Guidelines and the covered offense effectively controlled the sentence for the non-covered offense." United States v. Gladney, 44 F.4th 1253, 1262 (10th Cir. 2022) (citing United States v. Mannie, 971 F.3d 1145, 1153 (10th Cir. 2020)). "[T]he plain language of the Act permits the limited modification of a specific sentence, it does not give district courts carte blanche to modify terms of imprisonment other than those imposed for 'covered offenses.'" United States v. Young, 998 F.3d 43, 55 (2d Cir. 2021) (internal citations omitted). The

---

[11] In a recent unpublished opinion, United States v. Allen, No. 22-6746, 2023 WL 3050985, at * 1 (4th Cir. April 24, 2023), a district court, after finding a defendant eligible for relief on a drug conspiracy conviction under the First Step Act, reduced the sentence on the drug conviction. However, after consideration of the 18 U.S.C. § 3553(a) factors, the court declined to reduce the sentence on a RICO conviction based on distribution of cocaine and first-degree murder under Virginia law. Id. On appeal, the defendant argued that the district court could have reduced his sentence based on the sentencing package doctrine, but the Fourth Circuit did not address the argument because it found that the district court did not abuse its discretion when it declined to reduce the sentence on the RICO conviction based on its consideration of the § 3553(a) factors. "We have considered the parties' arguments and reviewed the record on appeal, and we conclude that the district court did not abuse its discretion in denying Allen's motion in part. The district court's purported failure to recognize that it could reduce Allen's sentence on his RICO conviction, if error, is harmless." Id. at *2.

Eleventh Circuit Court of Appeals recently held that a district court "'is permitted to reduce a defendant's sentence' under the First Step Act 'only on a covered offense' and 'is not free ... to change the defendant's sentences on counts that are not 'covered offenses . . ..'" United States v. Files, 63 F.4th 920, 931 (11th Cir. 2023) (quoting United States v. Denson, 963 F.3d 1080, 1089 (11th Cir. 2020) abrogated on other grounds by Concepcion, 142 S.Ct. at 2398).

Although the Fourth Circuit has not ruled on the issue, several district courts in the Fourth Circuit, including this one, have found that the sentencing package doctrine applies in First Step Act cases. See United States v. Ismel, No. 3:94-cr-00008, 2022 WL 1203823 (W.D. Va. April 22, 2022) (applying sentencing package doctrine in First Step Act case to decrease sentence on non-covered offense); United States v. Waller, No. 5:95-CR-70074-3, 2022 WL 1095049 (W.D. Va. Apr. 12, 2022) (applying sentencing package doctrine in First Step Act case to increase remaining sentence after reducing crack cocaine sentence to statutory minimum); United States v. Felton, 587 F.Supp.3d 366, 369–73 (W.D. Va. 2022) (citing Hudson, 967 F.3d at 611, and finding that application of the sentencing package doctrine fits logically alongside the Fourth Circuit's elaborations on the "holisitic resentencing" required by the First Step Act); United States v. Martin, No. RDB-04-0029, 2021 WL 3172278, at *2 (D. Md. July 27, 2021) (applying sentencing package doctrine where "uncovered offense" was grouped with a "covered offense" at sentencing); Sellers, 2021 WL 2550549 at *5 (applying sentencing package doctrine to reduce sentence on "uncovered offense"); Jones v. United States, 431 F.Supp.3d 740, 752 (E.D. Va. 2020) ("Since Petitioner is eligible for a new sentence for his drug counts, the Court may impose a new sentence on the gun counts as well or else

risk 'unbundl[ing] the entire sentence package[]'") (quoting United States v. Hadden, 475 F.3d 652, 669 (4th Cir. 2007)); Hill, 2020 WL 891009, at *4 (stating in First Step Act case that "[u]nder the sentencing package doctrine, when a district court reconsiders a sentence for one count, it can reconsider sentences for other counts"); United States v. Jackson, No. 3:99-00015-05, 2019 WL 6245759, at *4 (S.D. W.V. Nov. 21, 2019) (applying sentencing package doctrine set out in Hadden to First Step Act case).

The court agrees with the reasoning in Felton, 587 F.Supp.3d at 369–70 (quoting United States v. Collington, 995 F.3d 347, 355 (4th Cir. 2021) abrogated on other grounds by Concepcion, 142 S.Ct. at 2396), that application of the sentencing package doctrine is consistent with the Fourth Circuit's instruction that "'the First Step Act tasks district courts with making a holistic resentencing determination as to whether the original sentence remains appropriate in light of the Fair Sentencing Act's reforms.'" The court further agrees with the Felton court's conclusion:

> Fourth Circuit precedent supports application of the sentencing package doctrine to resentencings under the First Step Act, and … a sentence cannot be brought in line with the sentence a court would have imposed under the Fair Sentencing Act unless the entire sentence, as opposed to the covered offense in isolation, is included as part of the resentencing.

Id. Accordingly, the court will apply the sentencing package doctrine to DesAnges' sentence and examine his entire sentence although only the crack cocaine conviction was a "covered offense."

DesAnges' sentence on Count 1 was life, the statutory maximum once the government decided to not pursue the death penalty. Counts 1 and 3 were grouped for sentencing pursuant

21

to USSG § 3D1.2(b) and (c). PSR, ECF No. 99 ¶ 17. As discussed above, the court will reduce the sentence on Count 3 to the statutory maximum of 20 years. DesAnges' sentence on Count 4 was the statutory mandatory minimum of 5 years to run consecutive to any other sentence imposed.

In accordance with <u>Concepcion</u>, 142 S.Ct. at 2402 n.6, the court must first recalculate the sentencing guidelines to reflect the legal changes in the Fair Sentencing Act before considering the § 3553 factors. In DesAnges' case, the guidelines recalculation remains 360 months to life based on his offense level of 42 and his criminal history category of II. Addendum to PSR, ECF No. 100 at 3.

The court next turns to the § 3553(a) factors. <u>See also Concepcion</u>, 142 S.Ct. at 2401–03 (holding that when a court imposes a sentence under the First Step Act it may consider evidence of rehabilitation, disciplinary infractions, and unrelated guidelines changes).

Application of the 18 U.S.C. § 3553(a) factors requires the court to consider the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

22

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission . . . .

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C.A. § 3553(a).

Turning first to the nature and circumstances of the offense, as set forth above, DesAnges willfully participated in a cruel and heinous murder. He shot Datcher to prevent Datcher from testifying against him and injured Ford with whom he had no dispute. He also threatened other people to coerce them to not testify against him. DesAnges' murder of Datcher left two young children who have grown up without a father. PSR, ECF No. 99 ¶ 12. DesAnges also distributed crack cocaine to individuals for personal use and to people who redistributed it at his direction. Id. ¶ 6. He carried a firearm much of the time and sold cocaine

23

while armed. During the conspiracy, DesAnges bought a .9mm handgun, a .40 caliber semi-automatic handgun, and .380 caliber handgun. Id. ¶ 8. The nature and circumstances of the offense, and especially the circumstances surrounding Datcher's brutal murder and injury of Ford, weigh heavily against a sentence reduction.

Looking next at the history and characteristics of the defendant, DesAnges was 22 years old at the time he committed the offense with a relatively minor criminal history. When he was 15 years old, he was convicted of possession of cocaine with intent to distribute and of grand theft. Id. ¶¶ 28, 29. He had no convictions as an adult prior to conviction in this case. DesAnges reported that he was raised by his mother and step-father who were good providers and caregivers. Id. ¶ 33. It is presumed that the sentencing court took DesAnges' history and characteristics into account at sentencing and this court does not find a reason to reduce his sentence based on DesAnges' behavior as a juvenile and young adult.

DesAnges is now 50 years old and has spent more than 27 years incarcerated. Although he had a number of disciplinary infractions in the first 14 years of incarceration, he has had no disciplinary infractions since 2009. Inmate Discipline Data, ECF Nos. 132-2, 141 at 3. DesAnges credits his turnaround to a near-death experience he had in 2009 when he suffered a pulmonary embolism that required a month-long period of hospitalization. During the same period, his only daughter gave birth to his first grandchild. DesAnges advises the court that from that time forward, he focused on his spirituality, improving his work ethic, and participating in programs offered by the Bureau of Prisons (BOP). Letter from Omar DesAnges, ECF No. 132-1 at 1–2.

DesAnges is a long-time employee of UNICOR where he works as a quality assurance inspector in the production of eyeglasses. Id. at 3. He provided letters to the court from both his UNICOR supervisor and an outside government contractor with whom he works at the optical factory. They describe DesAnges as "reliable and self-respecting," a "model inmate and employee," "honest and always respectful," "rehabilitated and remorseful of his criminal ways," and as having a "real good work ethic." Letters, ECF No. 124-1 at 6, 7. DesAnges is allowed to work unsupervised because he is trusted to make decisions as to compliance with industry optics standards. Id. at 6. His UNICOR supervisor stated that in his twenty years of experience, DesAnges "is by far the most notable inmate that we have, that has shown he is ready to be back in society." Id. at 7. DesAnges also has taken a number of academic and life skills classes while incarcerated. Inmate Education Data, ECF Nos. 132-3, 141 at 1–2.

In addition to working at his UNICOR job, DesAnges works part-time as a barber and has completed forklift training. DesAnges Letter, ECF No. 132-1 at 3; Certificate, ECF No. 124-1 at 1. His family members have written letters of support for DesAnges and have pledged to help him adjust to life outside of prison if he is released, including providing him a place to live, access to transportation, and opportunities for employment. Letters, ECF No. 128-1.

Finally, DesAnges has written to the court expressing his remorse, regret, shame, and humiliation for the murder of Datcher. DesAnges Letter, ECF No. 132-1 at 1. DesAnges stated that although he was raised by supportive parents, as a teenager he was influenced by people he knew who were stealing, using and selling drugs, drinking, womanizing, and participating in violence. Id. He stated that the person he was in his 20s was "angry,

25

judgmental, vindictive, hateful, disrespectful and ignorant." Id. at 3. However, his deep spirituality has led him to be the opposite of who he was, and he no longer holds grudges or bitterness in his heart and no longer hates other people or himself. He described himself at 50 years old as a kinder, more considerate, positive, and social person who has learned to respect rules and the law. Id. at 4.

While DesAnges clearly was dangerous as a young man, the record indicates that he has matured while incarcerated. His work history and letters from his supervisors show that he has developed a solid work ethic and has earned the respect of his non-incarcerated co-workers. His ability to maintain contact with his family members for the past 27 years is admirable and speaks to his resolve to be a better person. DesAnges' letter to the court indicates that he has gained insight into his early behavior and is remorseful for the damage he caused. The court finds that DesAnges' history and characteristics, particularly over the last 13 years, weigh in favor of a sentence reduction.

Turning to the next two factors, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct, the court finds that the original sentence of life is longer than necessary to fulfill those goals. While murder clearly calls for a harsh penalty, DesAnges' behavior since incarcerated indicates that he has learned respect for the law. A lengthy sentence, while shorter than a life sentence, will afford adequate deterrence to further criminal conduct, both to DesAnges and other people in the community.

Regarding the next two factors, the court finds that DesAnges' age, coupled with his clear disciplinary history of the last 13 years, indicates that he is unlikely to commit further crimes. In addition, if released he will serve a term of supervised release and will have to report to a United States Probation Officer, which will offer further incentive for DesAnges to refrain from criminal conduct. As DesAnges has served more than 27 years, the court does not find that serving the remainder of his life sentence will provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Looking at the kinds of sentences available and the sentencing range established for the offense committed by a defendant with DesAnges' criminal history, as previously noted, his guidelines range is 360 months to life. A sentence on Count 1 of 390 months falls within the guidelines and accounts for the serious nature of his crime. Regarding the need to avoid sentencing disparities, DesAnges was not tried with co-defendants, making this factor weigh neither in favor nor against a sentence reduction. The remaining § 3553(a) factors weigh neither in favor nor against a sentence reduction.

Reducing the life sentence of a person convicted of murder is not done lightly. However, the Supreme Court held in Concepcion, 142 S.Ct. at 2404, that courts may consider evidence of rehabilitation developed after the initial sentencing when imposing a new sentence under the First Step Act. And the Fourth Circuit directs that "the First Step Act contemplates a robust resentencing analysis, albeit not a plenary resentencing hearing." Collington, 995 F.3d at 358. The Fourth Circuit has also made clear that post-sentencing evidence may be highly relevant to imposing a new sentence under the First Step Act. United States v. Chambers, 956

27

F.3d 667, 675 (4th Cir. 2020) abrogated on other grounds by Concepcion, 142 S.Ct. at 2402
n.6. Bearing these directives in mind, the court finds that in DesAnges' case, a reduction is
warranted. To not factor in the positive changes he has made after 27 years of incarceration
would be to ignore several of the sentencing factors in § 3553(a), namely the need for the
sentence imposed to promote respect for the law, afford adequate deterrence to criminal
conduct, and to protect the public from further crimes of the defendant.

Nor does the court make such a determination in a vacuum. Other courts considering
First Step Act motions related to sentences of life and longer for persons convicted of murder
have factored in rehabilitation and lowered defendants' sentences. In Ismel, 2022 WL
1203823, at *4, a defendant was sentenced to two life terms for convictions of conspiracy to
distribute 50 grams or more of crack cocaine and for murder during and in relation to a drug
distribution conspiracy. The defendant filed a First Step Act motion and the court, after
considering his prison disciplinary record, post-conviction education and training, service to
the prison community, employment history, youth at the time of the offense, and strong letters
of support, reduced his sentence to 360 months. In United States v. Fleming, No. ELH-08-
086, 2022 WL 743955 (D. Md. Mar. 11, 2022), the court reduced a sentence of two life terms
plus 240 months to 360 months after considering § 3553(a) factors. See also Felton, 587 F.
Supp.3d at 373–75 (reducing sentence of two life terms plus 120 months to 360 months based
on § 3553(a) factors); United States v. Jones, No. 3:99-cr-264-1 (VAB), 2020 WL 2791862 (D.
Conn. May 29, 2020) (reducing four concurrent life sentences to 450 months after considering
the § 3553(a) factors); and Carter v. United States, No. ELH-00-0100, 2020 WL 1914766 (D.

Md. Apr. 17, 2020) (reducing term of life plus 30 years to 35 years after considering § 3553(a) factors).

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in DesAnges' case. The sentencing court properly considered the vicious nature of DesAnges' murder of Datcher but had no way of predicting that DesAnges eventually would make a positive adjustment to incarceration and would find ways to better himself, even in the face of a life sentence. The court finds that DesAnges' current sentence is greater than necessary to achieve the statutory sentencing objectives and that a lesser sentence would adequately reflect the magnitude of DesAnges' criminal conduct. Given the circumstances of this case, including DesAnges' history and characteristics, both positive and negative, the court concludes that a sentence of 390 months on Count 1 and 240 months on Count 3, served concurrently, and 60 months on Count 4, served consecutively, for a total of 450 months, is appropriate. Additionally, because the offense of conviction is now considered a violation of 21 U.S.C. § 841(b)(1)(B), the term of supervised release is reduced to 4 years. See Addendum to PSR, ECF No. 100 at 3.

### IV. Conclusion

For the reasons stated above, the court (1) **DENIES** DesAnges' motion for compassionate release, ECF Nos. 124, 132; (2) **GRANTS in part** DesAnges' motion for relief under the First Step Act, ECF Nos. 95, 109, and (3) **REDUCES** his sentence to 390 months on Count 1, 240 months on Count 3, and 60 months on Count 4. Counts 1 and 3 will be served concurrently and Count 4 will be served consecutively to Counts 1 and 3, for a total

term of 450 months. DesAnges' term of incarceration will be followed by a 4-year term of supervised release under the conditions specified in the original judgment.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: May 8, 2023

Michael F. Urbanski
Chief United States District Judge